```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
JABADI SIMON and PASHA MUIR,                               :
                                                           :
                              Plaintiffs,                  :
                                                           :   **MEMORANDUM DECISION AND**
            -against-                                      :   **ORDER**
                                                           :
CITY OF NEW YORK, et al.                                   :   18-cv-3400 (BMC)
                                                           :
                              Defendants.                  :
                                                           :
                                                           :
----------------------------------------------------------- X
```

**COGAN**, District Judge.

Plaintiffs brought this action for alleged violations of their civil rights arising from a search of their property. Defendants have moved for summary judgment. The motion for summary judgment is granted for the reasons stated below.

## BACKGROUND

The following facts are taken from the affidavits, deposition transcripts, and other evidence the parties submitted in connection with defendants' motion for summary judgment. Individual defendants are police officers who executed two search warrants of a Brooklyn residence with four floors. Plaintiff Pasha Muir resided on the fourth floor of the residence; his nephew, plaintiff Jabadi Simon, resided on the third floor; and Linda Buie, Muir's mother, resided on the second floor.

The first warrant authorized defendants to search the "basement apartment" of the residence for a firearm, ammunition, cocaine, and cash, among other items. Since the actual basement of the residence was unfinished and did not appear to be an apartment, defendants interpreted the warrant's reference to the "basement apartment" to be a reference to the ground

floor. The NYPD Emergency Services Unit entered the residence first and (incorrectly) notified defendants that nobody was inside. Defendants entered through the ground floor and found Muir walking down the stairs. Muir informed the police that his nephew, Simon, was upstairs with Muir's nine-year-old daughter. Defendants then confronted Simon. Both plaintiffs were escorted to the ground floor and the young girl left with a family member. The ground floor included a living room, a kitchen, and a room that allowed for access to the backyard.

After realizing that the residence was a single-family home, defendants performed a "protective sweep" to ensure that the remainder of the residence was empty. Because defendants believed the first warrant only covered the ground floor, defendants searched the ground floor. Defendant Clint Elie found 17 plastic twist packages containing crack cocaine, 13 plastic twist packages containing powdered cocaine, and 42 plastic twist packages containing marijuana in a small room near the kitchen. Elie believed these items were packaged for sale. Defendant Jena Leocadio claims that plaintiffs were in the living room at the time defendants found the drugs and Muir told her that the marijuana was his, but Muir denies claiming ownership of the marijuana.

Defendants also sent an officer to obtain a second warrant to search the remaining floors for cocaine, marijuana (which the first warrant did not reference), and related items. After completing their search of the residence, defendants also found shotgun ammunition, drug paraphernalia, scales, and cash. Simon claims that nobody ever told him that marijuana and cocaine were found at the residence, but admits that his criminal defense attorney told him that bullets and ammunition were found there. Muir claims he was never aware that there was cocaine or marijuana in his residence.

While searching the residence, Leocadio found an ID card of Muir's indicating that his address was the address of the residence she was searching. Leocadio also found mail in the premises addressed to Simon at that address. According to Leocadio, Simon said he had his own room but had access to the entire house. Elie further confirms that at least one occupant of the residence told him that the ground floor was a common area and defendant David Esparragoza states that one of the plaintiffs identified the ground floor as "our common area … ."

Defendants arrested plaintiffs, who were then charged with criminal possession of a controlled substance, criminally using drug paraphernalia, endangering the welfare of a child, criminal possession of marijuana, and unlawful possession of marijuana. The charges were later dismissed. Plaintiffs assert the following claims: false arrest under New York state law and 42 U.S.C. § 1983; unlawful search under New York state law and 42 U.S.C. § 1983; failure to intervene under 42 U.S.C. § 1983; denial of a right to a fair trial due to fabrication of evidence under 42 U.S.C. § 1983; and malicious prosecution under New York state law and 42 U.S.C. § 1983.[1]

## **DISCUSSION**

Under Federal Rule of Civil Procedure 56, a court may grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Matsushita Elect. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (internal quotation marks omitted). Plaintiffs must put forward some "concrete evidence from which a reasonable

---

[1] Plaintiffs originally asserted negligent and intentional infliction of emotional distress claims but have since dropped these claims.

juror could return a verdict in his favor" to withstand a motion for summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). However, "only admissible evidence need be considered by the trial court in ruling on a motion for summary judgment." Raskin v. Wyatt Co., 125 F.3d 55, 66 (2d Cir. 1997).

### I. False Arrest

To prevail on a false arrest claim "a plaintiff must show that (1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." Savino v. City of New York, 331 F.3d 63, 75 (2d Cir. 2003) (internal quotation marks omitted). "The existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest, whether that action is brought under state law or under § 1983." Jenkins v. City of New York, 478 F.3d 76, 84 (2d Cir. 2007) (internal quotation marks omitted).

Constructive possession may give rise to probable cause for an arrest. Jackson ex rel. Jackson v. Suffolk County, 87 F. Supp. 3d 386, 405 (E.D.N.Y. Feb. 20, 2015). "Constructive possession exists when a person has the power and intention to exercise dominion and control over an object … ." United States v. Zaleski, 686 F.3d 90, 93 (2d Cir. 2012) (internal quotation marks omitted). Occupants of a house who have access to the area in which the contraband is found may have constructive possession of the contraband. See Brown v. City of New York, 14-cv-2700, 2015 WL 427942, at *5 (E.D.N.Y. Feb. 2, 2015) ("Brown I").

Here, plaintiffs' false arrest claims are dismissed because defendants had probable cause to arrest plaintiffs. Leocadio, Esparragoza, and Elie all indicated (and plaintiffs do not deny) that a plaintiff or another occupant of the residence informed them that the ground floor was a common area for the residence. Further, no reasonable jury could find that the residence's living

4

room, kitchen, and means of accessing the backyard were for the exclusive use of Muir's mother, who lived with plaintiffs. Moreover, the regular use of the premises for criminal activity strengthens the inference that plaintiffs had constructive possession of the contraband, and defendants had reason to believe the residence was regularly used for criminal activity since they were there pursuant to a warrant authorizing the search of the ground floor and they found illegal drugs Elie believed to be packaged for sale. See United States v. Ortiz, 943 F. Supp. 2d 447, 458 (S.D.N.Y. 2013). Under these circumstances, plaintiffs had constructive possession of the illegal drugs found in this common area, and defendants had probable cause to arrest plaintiffs upon finding these illegal drugs.

Plaintiffs' arguments to the contrary are not persuasive. Plaintiffs claim that they rarely, if ever, use the common area, but they do not claim to have told defendants so, and it would be impossible for defendants to infer, based solely upon inspection of the residence, who uses the common area and how often they use it. "Courts evaluating probable cause for an arrest must consider those facts available to the officer at the time of the arrest and immediately before it." Lowth v. Town of Cheektowaga, 82 F.3d 563, 569 (2d Cir. 1996). Thus, plaintiffs' post-arrest assertion that they rarely, if ever, used the common area where defendants found contraband does nothing to disturb the Court's finding that defendants had probable cause.

Even if plaintiffs told defendants that they rarely, if ever, used the common area before defendants arrested them, defendants were not obligated to take their word for it, nor were they "obligated to investigate the suspect's plausible claims of innocence … ." Celestin v. City of New York, 581 F. Supp. 2d 420, 432 (E.D.N.Y. 2008) ("It is not the role of police officers to sit as prosecutor, judge, or jury. Their function is to apprehend those suspected of wrongdoing.") (internal quotation marks and citations omitted). No investigation into plaintiff's actual use of

5

this area would have been dispositive anyway, since plaintiffs do not have to regularly use this area to have constructive possession of the drugs provided they had access to the common area. See Brown I, 2015 WL 427942, at *5.

Plaintiffs also claim that they could not have constructively possessed the drugs because the drugs were not in plain view. Although courts may consider "whether the drugs are in plain view, suggesting that the defendant is a trusted member of the narcotics operation" to determine whether a person constructively possesses the drugs, whether the drugs are in plain view is merely one out of "a number of factors in determining whether a person has the power and intention to exercise dominion and control over narcotics … ." United States v. Facen, 812 F.3d 280, 287 (2d Cir. 2016). Thus, whether the drugs were in plain view is not dispositive of whether plaintiffs constructively possessed them.

Further, plaintiffs claim that defendants lacked probable cause to arrest them because defendants found the drugs after, not before, arresting plaintiffs, but the record does not support plaintiff's contention. Plaintiffs cite to portions of Leocadio's deposition in which she states that she did not search for drugs until she obtained the second warrant, although she also stated in the same deposition that defendants found drugs before they arrested plaintiffs. Leocadio's deposition testimony is consistent with Elie's explanation that he, not Leocadio, was the one who found the drugs.

Plaintiffs further cite to an interview with defendant Paul Scocca, and provided the Court with a recording of this interview. In this interview, Scocca indicated that he did not find the drugs and that he does not know where the drugs were found, but surmised that defendants found the drugs after removing plaintiffs to the 79th Precinct because "we wouldn't have conducted the search then, yet." Scocca appears to have assumed that defendants found the drugs in connection

6

with a search of the entire residence pursuant to the second warrant, but his speculation is untethered to his personal perception because, as he admits, he did not find the drugs and does not know where they were found.[2] Further, plaintiffs concede that defendants conducted a search before removing them to the 79th Precinct: during his deposition Muir confirmed that defendants were searching his residence while Muir was in the living room.

Plaintiffs also cite to the second search warrant, which states that "there is probable cause for believing that certain property: namely crack cocaine, marijuana, and drug paraphernalia" are in plaintiff's four-story residence. To the extent plaintiffs infer that defendants could not have found any illegal drugs before receiving the second warrant or else there would be no need for the second warrant, no reasonable juror would make such an inference. Plaintiffs do not explain what basis there would be for probable cause to believe there was marijuana in the residence if defendants did not find any drugs prior to obtaining the second warrant, since the first warrant did not reference marijuana at all.

Finally, plaintiffs cite transcripts of their own depositions in which Muir stated that defendants never told him that they found drugs when they took Muir away from his residence, and in which Simon claimed he "never" learned that defendants found drugs or other contraband at his apartment (despite being charged with possessing these drugs and bringing this lawsuit). It is no surprise that plaintiffs did not know when defendants found the drugs, since it is unlikely that the police would allow plaintiffs to constantly accompany them while they searched the residence. In fact, Leocadio indicated that plaintiffs remained in the living room while

---

[2] Plaintiffs also cite to a non-verbatim summary of Scocca's interview, but such summaries would not be admissible into evidence at trial. See United States v. Almonte, 956 F.2d 27, 29 (2d Cir. 1992) ("The problem, in essence, is one of relevancy. If a third party's notes reflect only that note-taker's summary characterization of a witness's prior statement, then the notes are irrelevant as an impeaching prior inconsistent statement, and thus inadmissible.").

7

defendants found the drugs, which is the likely reason Muir did not know when Elie found drugs in the small room near the kitchen.  Plaintiffs' inability to substantiate a fact on the record does not make that fact genuinely disputed.

At most, plaintiffs can show that defendants did not notify them of the reason plaintiffs were arrested.  "While it is assuredly good police practice to inform a person of the reason for his arrest at the time he is taken into custody, we have never held that to be constitutionally required."  Devenpeck v. Alford, 543 U.S. 146, 155 (2004).  Nor is defendants' apparent failure to inform plaintiffs of the reasons for their arrest a reason to deny summary judgment on the false arrest claim.

## II.  Unlawful Search

"Once the officers had probable cause to arrest the plaintiff, they were entitled to search him."  Qing You Li v. City of New York, No. 16-cv-174, 2018 WL 6251339, at *5 (E.D.N.Y. Nov. 28, 2018).  As established above, defendants had probable cause to arrest plaintiffs, so they were entitled to search them.  The unlawful search claims are thus dismissed.

## III. Malicious Prosecution

To prevail on a malicious prosecution claim, plaintiffs must show, among other things, a "lack of probable cause . . . ."  Savino v. City of New York, 331 F.3d 63, 72 (2d Cir. 2003).  Further, "absent new countervailing facts, probable cause for arrest establishes probable cause for prosecution."  Jouthe v. City of New York, No. 05-cv-1374, 2009 WL 701110, at *12 (E.D.N.Y. March 10, 2009) (internal quotation marks omitted).

Since there was probable cause to arrest plaintiffs, and there are no countervailing facts that show otherwise, the malicious prosecution claims are dismissed.

## IV. Denial of the Right to a Fair Trial

To prevail on a claim for denial of the right to a fair trial based on fabrication of information, a plaintiff must show that "(1) an investigating official (2) fabricated information (3) that is likely to influence a jury's verdict, (4) forwarded that information to prosecutors, and (5) the plaintiff suffered a deprivation of life, liberty, or property as a result." Garnett v. Undercover Officer C0039, 838 F.3d 265, 279 (2d Cir. 2016) (citing Ricciuti v. New York City Transit Authority, 124 F.3d 123, 130 (2d Cir. 1997)). The Second Circuit has held that a plaintiff may prevail on a claim for the denial of a right to a fair trial even when the charges are dismissed before trial. See Ricciuti, 124 F.3d at 127. "It thus appears that the right described in Ricciuti is more akin to an 'attempted' denial of the right to a fair trial." Brown v. City of New York, 14-cv-5372, 2014 U.S. Dist. LEXIS 181736, at *7 (E.D.N.Y. Dec. 24, 2014) ("Brown II").

"The manufacture of false evidence, in and of itself … does not impair anyone's liberty, and therefore does not impair anyone's constitutional right" if the manufacture of false evidence "did nothing to precipitate the sequence of events that resulted in a deprivation of" liberty. Zahrey v. Coffey, 221 F.3d 342, 348 (2d Cir. 2000) (internal quotation marks omitted). "Therefore, in order to have a cognizable claim for denial of the right to a fair trial, a plaintiff must establish a causal connection between the fabricated evidence and his deprivation of liberty." Brown II, 2014 U.S. Dist. LEXIS 181736, at *4.

Plaintiffs claim defendants deprived them of their right to a fair trial – or attempted to deprive them of this right, since there was no trial – by fabricating evidence, but the only allegedly fabricated evidence plaintiffs point to is Leocadio's claim that Muir confessed that he possessed the marijuana defendants found at his residence. Leocadio included her claim that

9

"Muir stated, in sum and substance, the marihuana belongs to me" in the criminal complaint that she signed.

Evidence of Muir's apparent confession – regardless of whether this evidence was falsified – would not implicate Simon, but instead would help exonerate him by showing that the marijuana was Muir's, not Simon's. Even as to Muir, the alleged fabrication of evidence did nothing to precipitate a deprivation of liberty because there was probable cause to prosecute Muir based on his constructive possession of the marijuana. Further, plaintiffs were charged with other offenses besides possession of marijuana. See Blue v. City of New York, No. 16-cv-9990, 2018 WL 2561023 (S.D.N.Y. June 4, 2018) (dismissing a denial of a right to a fair trial claim when plaintiff "was – and would have been – in custody pursuant to his other five burglary charges even absent the charge" for which plaintiff was allegedly denied the right to a fair trial).

Plaintiffs' argument to the contrary is not persuasive. Plaintiffs claim that the "deprivation prong may be satisfied even if an officer had probable cause to make an arrest on another charge." Plaintiffs are correct that "a Section 1983 claim for the denial of a right to a fair trial based on an officer's provision of false information to prosecutors can stand even if the officer had *probable cause to arrest* the Section 1983 plaintiff." See Garnett, 838 F.3d at 277-78 (emphasis added). However, a denial of a right to a fair trial claim fails if "the evidence supporting *probable cause to prosecute* [plaintiff] was sufficiently strong that any allegedly fabricated evidence did not proximately cause the deprivations of liberty associated with his prosecution." Hoyos v. City of New York, 650 F. App'x 801, 803 (2d Cir. 2016) (emphasis added). Here, there was probable cause to prosecute Muir – not just probable cause to arrest him – based on his constructive possession of marijuana and other contraband independent of whether Muir confessed to Leocadio that the marijuana was his.

## V. Failure to Intervene

"It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." Anderson v. Branen, 17 F.3d 552, 557 (2d Cir. 1994). "To establish such a claim of failure to intervene, a plaintiff must prove the following four elements: (1) that a constitutional violation was being committed against the plaintiff; (2) that the officer knew, or deliberately ignored, the fact that the constitutional violation was going to be, or was being, committed; (3) that the defendant had a reasonable opportunity to intervene and prevent the harm; and (4) that the defendant did not take reasonable steps to intervene." Thomas v. City of Troy, 293 F. Supp. 3d 282, 296 (N.D.N.Y. 2018). "If the Court determines that the officer's conduct did not violate a constitutional right, however, the analysis [of a failure to intervene claim] ends." Feinberg v. City of New York, No. 99cv12127, 2004 WL 1824373, at *4 (S.D.N.Y. Aug. 13, 2004).

Because plaintiffs have not shown that any of their constitutional rights were violated, the failure to intervene claim is dismissed.

## VI. Qualified Immunity

Qualified immunity "shields public officials performing discretionary functions from civil liability insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known or insofar as it was objectively reasonable for them to believe that their acts did not violate those rights." Bradway v. Gonzales, 26 F.3d 313, 317–18 (2d Cir. 1994) (internal citations omitted). This standard protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986).

Because "fabrication of evidence violated a clearly established constitutional right," Leocadio would not be entitled to qualified immunity if plaintiffs prevailed on the denial of a right to a fair trial claim.  Garnett, 838 F.3d at 276 (internal quotation marks and alterations omitted).  However, even if the Court did not dismiss plaintiffs' additional claims, qualified immunity would protect the individual defendants from liability for those claims.  They reasonably inferred that the ground floor was a common area to which plaintiffs had access, in part based on the residence's occupants' description of the ground floor as a common area, and appropriately arrested plaintiffs based on their constructive possession of the illegal drugs in this common area.

**VII.     Monell**

Plaintiffs bring a claim against the City of New York under Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 654 (1978) ("[W]hen execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury … the government as an entity is responsible under § 1983.").  However, Courts dismiss Monell claims when there is no underlying constitutional violation.  See Segal v. City of New York, 459 F.3d 207 (2d Cir. 2006).

## **CONCLUSION**

Defendants' [24] motion for summary judgment is granted. This case is dismissed and the Clerk shall enter judgment in favor of defendants, dismissing the complaint.

**SO ORDERED.**

                                                                                                                        _____
                                                                                                                                 U.S.D.J.

Dated: Brooklyn, New York
         June 24, 2019